# In the United States Court of Federal Claims

No. 13-969 C
Filed under seal: January 13, 2014[*]
Reissued for publication: January 14, 2014

*****************************************

|  |  |
|---|---|
| SRA INTERNATIONAL, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>　　　　Defendant. | Administrative Procedure Act,<br>　　5 U.S.C. § 706(2)(A) (arbitrary<br>　　and capricious action);<br>Federal Acquisition Streamlining Act<br>　　of 1994;<br>Jurisdiction;<br>Organizational Conflicts of Interest,<br>　　48 C.F.R. § 9.500(a);<br>Waiver of Conflict of Interest,<br>　　48 C.F.R. § 9.503;<br>4 C.F.R. § 21.11 (advisory opinion);<br>12 C.F.R. § 366.1 ("minimum<br>　　standards of integrity and fitness<br>　　required by Federal Deposit<br>　　Insurance Corporation<br>　　contractors");<br>12 U.S.C. § 1819(a) (corporate<br>　　powers of the Federal Deposit<br>　　Insurance Corporation);<br>12 U.S.C. § 1822(f) (conflicts of<br>　　interest governing Federal<br>　　Deposit Insurance Corporation<br>　　contractors);<br>31 U.S.C. § 3554(b)–(c) (decisions<br>　　on bid protests by the United<br>　　States Government<br>　　Accountability Office). |

*****************************************

**Robert S. Metzger**, **Patricia A. Meagher**, **Jeffery M. Chiow**, **Oliya S. Zamaray**, Rogers Joseph O'Donnell PC, Washington, D.C., Counsel for the Plaintiff.

**Christopher James Carney**, United States Department of Justice, Trial Attorney, Commercial Litigation Branch, Washington, D.C., Counsel for the Government.

---

[*] On January 13, 2014, the court forwarded a sealed copy of this Memorandum Opinion and Order to the parties to delete from the public version any confidential and/or privileged information. No redactions were requested.

**Marie Cochran**, United States General Services Administration, Assistant General Counsel, Personal Property Division, Washington, D.C., Counsel for the Government.

**Duncan N. Stevens**, **Robert J. Brown**, Federal Deposit Insurance Corporation, Arlington, VA, Counsel for the Government.

## MEMORANDUM OPINION AND ORDER

**BRADEN**, *Judge*.

I.  **RELEVANT FACTUAL BACKGROUND.**[1]

To date, SRA International, Inc. ("SRA" or "Plaintiff") has provided network infrastructure support to the Federal Deposit Insurance Corporation ("FDIC"), pursuant to a September 2009 FDIC Infrastructure Support Contract ("ISC-2 Contract").[2] Compl. ¶ 11; Pl. Mem. Ex. A at A0003. The ISC-2 Contract was a task order, issued under the General Services Administration's ("GSA") Millenia Government-Wide Acquisition Contract ("Millenia GWAC"). Pl. Mem. Ex. A at A0008; Pl. Mem. Ex. G ¶ 1 (Contracting Officer's September 25, 2012 Statement of Facts in the United States Government Accountability Office Protest of SRA International, Inc., B-407709.5 (hereinafter the "CO's Statement")).

On June 21, 2012, the GSA Federal Systems Integration and Management Center ("FEDSIM") issued Task Order Request #GSC-QF0B-12-0020, on behalf of the FDIC, pursuant to the Alliant GWAC (that superseded the Millenia GWAC). Pl. Mem. Ex. G ¶ 1 (CO's Statement). On October 22, 2012, the GSA awarded Task Order #GST0013AJ0013 to Computer Sciences Corporation ("CSC"). After SRA filed a protest at the United States Government Accountability Office ("GAO"), GSA terminated the October 22, 2012 Task Order for convenience on December 13, 2012. Pl. Ex. G ¶ 2.

After a series of corrective amendments,[3] on August 14, 2013, the GSA awarded Task Order #GST0013AJ0084 ("ISC-3 Contract" or "Task Order") to CSC for a price of $365,462,364, including all options. Pl. Mem. Ex. G ¶ 24. During an August 21, 2013 debriefing with SRA, the GSA confirmed that Blue Canopy Group, LLC ("Blue Canopy") was going to be a subcontractor for CSC on the ISC-3 Contract. Compl. ¶ 13. During the last five

---

[1] The relevant facts discussed herein were derived from: the December 9, 2013 Complaint and exhibits attached to a December 9, 2013 Memorandum of Points And Authorities In Support Of Plaintiff's Application For A Temporary Restraining Order and Preliminary Injunction ("Pl. Mem. Exs. A–O").

[2] The Complaint refers to the September 2009 FDIC Infrastructure Support Contract with SRA as the "ISC-2 Contract." Compl. ¶ 11.

[3] The CO's Statement describes these corrective amendments. Pl. Mem. Ex. G ¶¶ 3–7; *see also id.* ¶ 2 ("As part of its corrective action in response to the [October 22, 2012 SRA's GAO] protest, the [GSA] worked with FDIC to define the parameters of the re-procurement.").

years, however, Blue Canopy worked under a FDIC contract to conduct security audits of SRA's network security, providing Blue Canopy with "access to SRA's proprietary information" and knowledge of "how the FDIC evaluated SRA's work." Compl. ¶ 15.

Accordingly, on August 26, 2013, SRA filed a second protest with the GAO, citing two organizational conflicts of interest ("OCI") resulting from Blue Canopy's FDIC work: (1) impaired objectivity; and (2) unequal access to information. Compl. ¶ 14.[4]

On September 25, 2013, the GSA informed the GAO that Blue Canopy would not work on the ISC-3 Contract. Compl. ¶ 20; Pl. Mem. Ex. F at A0110. SRA agreed that this resolved the impaired objectivity OCI, but not the unequal access to information conflict. Compl. ¶ 23.

In addition, SRA insisted that GAO proceed with the protest, because Section H.9.1 of the Task Order Request also requires compliance with the FDIC ethics regulations, set forth in 12 C.F.R. § 366.1.[5] Compl. ¶ 28 (citing Section H.9.1 of the Task Order Request). And, Section K of the Task Order Request further advises contractors that the failure to certify compliance with 12 C.F.R. § 366.1 "shall result in the offeror being found non-responsible for award of this task order." Compl. ¶ 29 (quoting Task Order Request, 12 C.F.R. § 366.1).

On November 25, 2013, the GSA issued a Determination and Findings for Waiver of Organizational Conflict of Interest Rules (hereinafter the "Waiver"). Pl. Mem. Ex. A at A0002. The Waiver stated that "FEDSIM believes that the application of the conflicts rules set forth in FAR subpart 9.5 to this [Task Order] is not in the Government's interest and that the waiver in accordance with . . . FAR 9.503[6] is appropriate." Pl. Mem. Ex. A at A0002. Consequently, on December 3, 2013, the GAO dismissed SRA's protest as "academic." Compl. ¶ 4.

## II.   PROCEDURAL HISTORY.

On December 9, 2013, SRA filed a post-award bid protest Complaint in the United States Court of Federal Claims. Count I seeks a declaration, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), that the Waiver violated the FDIC's rules for ethics and conduct, set forth at 12 U.S.C. § 1819(a)[7] (Tenth) and 12 U.S.C. § 1822(f).[8] Compl. ¶¶ 32, 38. Count II

---

[4] FAR subpart 9.5 "[p]rescribes responsibilities, general rules, and procedures for identifying, evaluating, and resolving organizational conflicts of interest." 48 C.F.R. § 9.500(a).

[5] "[P]art [366] establishes the minimum standards of integrity and fitness that contractors . . . must meet if they perform any service or function on [FDIC's] behalf." 12 C.F.R. § 366.1.

[6] FAR Section 9.503 provides that an agency "may" waive rules or procedures concerning organizational conflicts of interest (subpart 9.5), "by determining that its application in a particular situation would not be in the Government's interest." 48 C.F.R. § 9.503.

[7] The FDIC's regulatory authority includes the power

[t]o prescribe by its Board of Directors such rules and regulations as it may deem necessary to carry out the provisions of [Chapter 16 of the United States Code] or

3

seeks a declaration that the Waiver violated FAR 9.503. Compl. ¶ 46. Counts III and IV allege that CSC and Blue Canopy also submitted false and materially misleading certifications, in violation of 12 C.F.R. § 366.1, requiring issuance of a permanent injunction. Compl. ¶¶ 51, 54, 57, 61. The December 9, 2013 Complaint does not include a Count V. Count VI, however, seeks a declaration that the FDIC cannot make "an illegal award to an invalid offeror." Compl. ¶ 65. Count VII seeks a temporary restraining order. Compl. ¶¶ 68–70.

On December 9, 2013, SRA also filed: a Motion For Temporary Restraining Order; a Motion For Preliminary Injunction; and a Motion For A Protective Order. SRA also filed a Memorandum of Points And Authorities In Support Of Plaintiff's Application For A Temporary Restraining Order and Preliminary Injunction.

On December 11, 2013, the court convened a telephone conference to discuss jurisdictional issues raised in the December 9, 2013 Complaint and ordered the parties to brief the issue of the court's jurisdiction.

On December 16, 2013, the Government filed a Motion to Dismiss. On December 20, 2013, SRA filed a Response. On December 23, 2013, the Government filed a Reply, with leave of the court.[9]

## III. DISCUSSION.

### A. Standard Of Review For Subject-Matter Jurisdiction, Pursuant To RCFC 12(b)(1) And 12(h)(3).

As a matter of law, the court must consider jurisdiction before reaching the substantive merits of a case. *See Gonzalez v. Thaler*, ___ U.S. ___, 132 S.Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); *see also Special Devices, Inc. v. OEA,*

---

of any other law which it has the responsibility of administering or enforcing (except to the extent that authority to issue such rules and regulations has been expressly and exclusively granted to any other regulatory agency).

12 U.S.C. § 1819(a).

[8] Congress requires that the FDIC through its Board of Directors to prescribe

regulations applicable to those independent contractors . . . governing conflicts of interest, ethical responsibilities, and the use of confidential information . . . . Any such regulations shall be in addition to, and not in lieu of, any other statute or regulation which may apply to the conduct of such independent contractors.

12 U.S.C. § 1822(f)(3).

[9] On December 11, 2013, CSC filed a Motion To Intervene which the court will consider at a later date.

*Inc.*, 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("Jurisdiction is a threshold issue that the court may raise *sua sponte*."); *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). Subject-matter jurisdiction may be challenged "at any time by the parties or by the court sua sponte." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); *see also* RCFC 12(b)(1) (allowing parties to assert lack of subject-matter jurisdiction by motion); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). When deciding a subject-matter jurisdiction challenge, the court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000) (citation omitted).

      B.      **The Effect Of The Federal Acquisition Streamlining Act On The Jurisdiction Of The United States Court Of Federal Claims To Adjudicate Bid Protests.**

The Tucker Act authorized the United States Court of Federal Claims

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).

The Federal Acquisition Streamlining Act of 1994 ("FASA"),[10] however, precludes the court from adjudicating protests "in connection with the issuance or proposed issuance of a task or delivery order," unless the protest is "on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." 41 U.S.C. § 4106(f);[11] *see*

---

[10] Pub. L. No. 103-355, § 1004, 108 Stat. 3243, 3252–53 (codified at 10 U.S.C. § 2304c(e) and 41 U.S.C. § 4106(f)). FASA was enacted as a "comprehensive overhaul of the federal acquisition laws" to "improve the efficiency and effectiveness of the laws governing the manner in which the government obtains goods and services." *DataMill, Inc. v. United States*, 91 Fed. Cl. 740, 751–52 (2010) (quoting S. Rep. No. 103-258, at 1–2, 3 (1994)).

[11] Section 4106 of the FASA provides:

    (a) Application.—This section applies to task and delivery order contracts entered into under sections 4103 and 4105 of this title.

    . . .

    (f) Protests.—

5

*also BayFirst Solutions LLC v. United States*, 104 Fed. Cl. 493, 502 (2012) ("This court has consistently interpreted the [Section 4106(f)] ban as prohibiting task order protests in this court on any grounds[,] other than the specific excepted allegations of excessive scope, period, or value of the proposed task order."). As to protests "in connection with the issuance or proposed issuance of a task or delivery order . . . . valued in excess of $10,000,000," the FASA vests the Comptroller General of the GAO with exclusive jurisdiction. *See* 41 U.S.C. § 4106(f).[12]

### 1. The Government's Argument.

The Government argues that the United States Court of Federal Claims consistently has dismissed bid protests that concern the issuance of a task order. Gov't Br. 11–12; *see also MORI Assocs., Inc. v. United States*, 113 Fed. Cl. 33, 37–38 (2013) (dismissing a protest of an agency's decision to obtain services by issuing a task order); *Chameleon Integrated Servs. LLC v. United States*, 111 Fed. Cl. 564, 570–71 (2013) (determining that the court does not have jurisdiction to adjudicate a bid protest concerning a task order); *Mission Essential Pers., LLC v. United States*, 104 Fed. Cl. 170, 179 (2012) ("[C]orrective action relates to, and is connected with, the issuance of a task order."); *Solute Consulting v. United States*, 103 Fed. Cl. 783, 791–94 (2012) (dismissing a challenge to an agency's evaluation of task order proposals); *DataMill*, 91 Fed. Cl. at 761–62 (determining that the United States Army's decision to use a delivery order for a sole-source procurement was "in connection" with a delivery order)).

The Government contends that SRA's protest also concerns the issuance of a task order under the same kind of interagency GWAC for which the United States Court of Federal Claims previously has applied the FASA bar. Gov't Br. 12 (citing *Chameleon Integrated Servs.*, 111 Fed. Cl. at 571 (determining that a task order issued pursuant to an interagency GWAC is subject to the FASA ban, because the plaintiff "offer[ed] no category other than FASA under which to

---

> (1) Protest not authorized.—A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for—
>
>> (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or
>>
>> (B) a protest of an order valued in excess of $10,000,000.
>
> (2) Jurisdiction over protests.—Notwithstanding section 3556 of title 31, the Comptroller General shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).
>
> (3) Effective period.—Paragraph (1)(B) and paragraph (2) of this subsection shall not be in effect after September 30, 2016.

41 U.S.C. § 4106.

[12] The Task Order at issue in this case is valued at well over $10 million. Pl. Mem. Ex. G ¶ 24.

treat the task order"). Nevertheless, "SRA is attempting to bring a prohibited task order protest before this [c]ourt." Gov't Br. 13–14 (citing, *e.g.*, Compl. ¶ 2 ("These certifications, and the absence of OCI, were expressly required by the [Task Order Request] and applicable FDIC regulations[.]"); Compl. ¶ 5 ("[A]n award to CSC will deprive SRA of a task order[.]")). In addition, the relief requested in *Mission Essential Personnel*, *Chameleon Integrated Services*, *BayFirst Solutions*, and *DataMill* is the same as that sought here, *i.e.*, in each case, the protestor requested that the court enjoin and set aside a task order award. In each case, however, the court correctly applied the FASA bar and "declined to do so." Gov't Br. 14; *see also* Gov't Br. 15 ("Once it is understood that the ISC-3 procurement refers to GSA's task order request, FASA is plainly implicated and the lack of jurisdiction by this [c]ourt is confirmed."). In other words, because the relief requested by SRA implicates a task order, the court does not have jurisdiction. Gov't Br. 14.

Moreover, the facts establish that "the OCI waiver at issue here was made in connection with and in furtherance of the issuance of a task order." Gov't Br. 16. The GSA's Senior Procurement Executive, approving the Waiver, found that the benefit of proceeding with the Task Order outweighed any alleged "unsubstantiated residual possibility of an OCI in this situation." Gov't Br. 16 (quoting Pl. Mem. Ex. A at A0011). In addition, the Alliant GWAC governing this Task Order authorizes a waiver, "if the [CO] determines that it is in the best interest of the Government to issue the Order." Gov't Br. 17 (quoting Alliant GWAC § H.9). Indeed, SRA also conceded that GAO has exclusive jurisdiction over the OCI and the subsequent Waiver, as the Task Order exceeded the $10,000,000 threshold. Gov't Br. 17.

Finally, SRA's argument that the FASA bar does not apply to protests concerning violations of law or regulation "in connection with a procurement" (Pl. Mem. 14) "is a misstatement of law." Gov't Br. 21. Only two exceptions exist: the increased scope, value or period exception; and the $10 million exception. Gov't Br. 21 (citing *Mission Essential Pers.*, 104 Fed. Cl. at 177 n.17 ("[The] law provides for two exceptions to its general ban on task-order-related protests."); *see also* Gov't Br. 26 (arguing that SRA could have challenged the Waiver during the 2013 GAO protest). To create an exception to challenge violations of law or regulation would obliterate the bar. Gov't Br. 21; *see also* Gov't Br. 23 (citing *BayFirst Solutions*, 104 Fed. Cl. at 505 (declining to adjudicate a protest, even where the procurement violated a regulation establishing a dollar ceiling for noncompeted task orders); *Mission Essential Pers.*, 104 Fed. Cl. at 179 (same, where corrective action allegedly violated statutory and regulatory provisions); *DataMill*, 91 Fed. Cl. at 762 (same, where an agency allegedly violated the Competition in Contracting Act)). In this case, "all the violations of law and regulations [in SRA's Complaint] . . . [are] derive[d] from the task order request itself." Gov't Br. 24.

   2.   **The Plaintiff's Response.**

SRA responds that this case challenges the Waiver, not the August 14, 2013 award of the Task Order to CSC. Pl. Resp. 1–3. In issuing the Waiver, the GSA and FDIC violated several statutory and regulatory obligations. Pl. Resp. 2 (citing Compl. Counts I, II, and III); *see also* Pl. Resp. 5 ("SRA addressed the independent obligations of FDIC law and regulation, as distinct from the terms of the Solicitation, throughout [SRA's] Complaint."). The United States Court of Federal Claims also has jurisdiction to review the Waiver, because "FDIC's laws and regulations

exist apart from the task order request and the task order." Pl. Resp. 5; *see also* Pl. Resp. 14–15 (citing *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080 (Fed. Cir. 2001) ("[T]he [United States] Court of Federal Claims is the only judicial forum to bring any governmental contract procurement protest."); *Novell, Inc. v. United States*, 109 F. Supp. 2d 22, 24 (D.D.C. 2000) ("[T]here no longer is . . . an independent, APA-based jurisdiction for the district courts in government bid protest cases; rather, Congress effectively subsumed APA jurisdiction of the district courts into the more specific jurisdictional language of [the Administrative Dispute Resolution Act of 1996]."). Although the GAO can "recommend an appropriate remedy," GAO decisions "lack the force and effect of law, even where GAO finds a procurement violation." Pl. Resp. 30 (citing 31 U.S.C. § 3554(b)–(c)).[13] In this case, "GAO offers no meaningful remedy." Pl. Resp. 31.

The Tucker Act authorizes the United States Court of Federal Claims to adjudicate objections to: (a) solicitations; (b) awards; or (c) "any alleged violation of a statue or regulation in connection with a procurement." Pl. Resp. 21 (citing 28 U.S.C. § 1491(b)(1)). The FASA bar on bid protests "in connection with the issuance of a task order" corresponds to (b), precluding judicial review, where an award or proposed award concerns a task order. Pl. Resp. 21. That bar, however, does not affect (c), *i.e.*, any alleged violation of statute or regulation in connection with a procurement. Pl. Resp. 21; *see also* Pl. Resp. 18–19 (citing *Distrib. Solutions, Inc. v. United States*, 539 F.3d 1340, 1345–46 (Fed. Cir. 2008) (holding that the United States Court of Federal Claims has jurisdiction to review a bid protest of a task order that allegedly violated the Competition in Contracting Act's requirements)). In this case, SRA does not challenge GSA's award of the Task Order, but the "*post-award* decision" by GSA to issue the Waiver. Pl. Resp. 19, 22–23 (emphasis in original).

It is well established that the conduct at issue in this case is subject to judicial review when the "conduct is segregable from the issuance or proposed issuance of a task order." Pl. Resp. 19 (citing *Distrib. Solutions*, 539 F.3d 1340; *see also Global Computer Enters. v. United States*, 88 Fed. Cl. 350, 410 (2009), *modified on other grounds*, 88 Fed. Cl. 466 (2009) (explaining that the FASA bar governs only the issuance or proposed issuance of a task order)). For example, in *McAfee v. United States*, 111 Fed. Cl. 696 (2013), the court examined "[t]he predicate for [the plaintiff's] claim" and determined that the court had jurisdiction because the contractor did not challenge the delivery order, but rather a separate decision to shift to a sole source, standardized network security system. Pl. Resp. 23 (citing *McAfee*, 111 Fed. Cl. at 707–08); *see also* Pl. Resp. 25 (citing *Global Computer Enters.*, 88 Fed. Cl. at 414–15 (exercising jurisdiction to adjudicate a modification to a task order); *Unisys Corp. v. United States*, 90 Fed. Cl. 510, 517 (2009) (exercising jurisdiction to adjudicate a challenge to a decision to waive a stay provision during a GAO protest of a task order)).

Only "where the protest challenges the issuance or prospective issuance of a task order" does the FASA bar apply. Pl. Resp. 26 (citing *Chameleon Integrated Servs.*, 111 Fed. Cl. at 570–71 (applying the FASA bar to prohibit a challenge to corrective action made to a task

---

[13] 31 U.S.C. § 3554(b) and (c) sets forth procedures by which the GAO will recommend corrective actions, if "the Comptroller General determines that the solicitation, proposed award, or award does not comply with a statute or regulation." 31 U.S.C. § 3554(b)(1).

order); *see also Mission Essential Pers.*, 104 Fed. Cl. at 179 ("[T]he Army's corrective action is . . . intimately entwined with the issuance of the two initial task orders.")). In this case, "SRA seeks relief [that] is simply not inextricably linked to the issuance or proposed issuance of a task order." Pl. Resp. 29. Instead, the relief requested is tied to specific alleged violations of law and regulation stemming from the issuance of the Waiver. Pl. Resp. 29. The Government's "novel proposition that asking for relief that might upset a task order award strips this [c]ourt of jurisdiction" is an "odd rule" that is not supported in law, regulation, or appellate precedent. Pl. Resp. 28.

### 3. The Court's Resolution.

The threshold issue in this case is whether SRA's challenge to the Waiver is a protest "*in connection with* the issuance or proposed issuance of a task . . . order." *See* 41 U.S.C. § 4106(f)(1) (emphasis added).

The United States Court of Appeals for the Federal Circuit has interpreted the phrase "in connection with," as used in 28 U.S.C. § 1491(b)(1), broadly. *See RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("The operative phrase "in connection with" [of 28 U.S.C. § 1491(b)] is very sweeping in scope."). The United States Court of Appeals for the Federal Circuit also has held that, "[u]nder [the *in pari materia*] canon, courts should interpret statutes with similar language that generally address the same subject matter together, 'as if they were one law.'" *Strategic Hous. Fin. Corp. of Travis County v. United States*, 608 F.3d 1317, 1330 (Fed. Cir. 2010) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972)). To be sure, the subject matter of 28 U.S.C. § 1491(b)(1) and 41 U.S.C. § 4106(f) concern the bid protest jurisdiction of the United States Court of Federal Claims, but the Government does not argue that application of the *in pari materia* canon is appropriate here. In any event, the court reads the appellate court's "sweeping" characterization of the scope of 28 U.S.C. § 1491(b)(1) as dicta. *See Global Computer Enters.*, 88 Fed. Cl. at 419 ("The [United States Court of Appeals for the] Federal Circuit's interpretation of the phrases 'in connection with' and 'procurement' in the Tucker Act ultimately offer no guidance concerning the meaning of the phrases 'in connection with' and 'task order' in the FASA."); *cf. Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1374 (Fed. Cir. 2009) (Dyk, J., dissenting) (limiting the scope of the military task order bar, codified at 10 U.S.C. § 2304c(e)(1) (similar to the FASA bar), to "challenges to the task order or delivery order," but not "protests of an overall solicitation or IDIQ contract"). Instead, the court is persuaded that "a careful analysis of the connectedness of each challenged procurement decision to the issuance or proposed issuance of a task order" is required. *BayFirst Solutions*, 104 Fed. Cl. at 503; *see also id.* ("[V]ariations in interpretation of the task order protest ban . . . arise in the complex and distinct fact patterns of individual bid protests.").

The gravamen of the Government's argument fails to acknowledge that the court's jurisdictional inquiry is not whether the alleged unlawful agency action is *related to* the issuance of a task order, but rather whether the alleged unlawful agency action was made "*in connection with*" the issuance of a task order. *See, e.g.*, Gov't Br. 15 ("Once it is understood that the ISC-3 procurement *refers* to GSA's task order request, FASA is plainly implicated and the lack of jurisdiction by this Court is confirmed." (emphasis added)). In such circumstances, the court has

exercised jurisdiction to adjudicate the lawfulness of a variety of actions *related* to a task order.[14] For example, the court has determined that an agency decision to cancel a solicitation so it could transition contract services to another contractor by task order was "a discrete procurement decision," not subject to the FASA bar. *See BayFirst Solutions*, 104 Fed. Cl. at 507. Although the cancellation and subsequent issuance of the task order nominally were "connected," the court exercised jurisdiction, because the agency's cancellation action still "could have been the subject of a separate protest." *Id.*; *see also id.* at 508 (citing *e-Management Consultants, Inc.*; *Centech Group, Inc.*, B-40585.2, B-400585.3, 2009 CPD ¶ 39, 2009 WL 416345 (Comp. Gen. Feb. 3, 2009) (allowing a challenge to the cancellation of a solicitation, but not allowing a challenge to the subsequent task order)). In addition, the court has determined that "[d]iscrete, preliminary matters that may not necessarily lead to the proposed issuance of a task order," are not subject to the FASA bar. *See Mori Assocs., Inc. v. United States*, 113 Fed. Cl. 33, 38–39 (2013) (exercising jurisdiction to adjudicate a small business set aside); *see also Savantage Fin. Servs., Inc. v. United States*, 81 Fed. Cl. 300 (2008) (exercising jurisdiction to adjudicate a challenge to an agency's Brand Name Justification); *Weeks Marine, Inc. v. United States*, 79 Fed. Cl. 22 (2007), *rev'd on other grounds* 575 F.3d 1352 (Fed. Cir. 2009) (exercising jurisdiction to adjudicate a challenge to a decision to use task orders, instead of sealed bidding).

In this case, the best evidence that the Waiver was not made "in connection with" the award of the Task Order to CSC is that fact that the Waiver was issued well after the award. "Procurement decisions that are made *after* task orders have been issued" are not subject to the FASA bar. *See Mori Assocs.*, 113 Fed. Cl. at 38 (citing *Global Computer Enters.*, 88 Fed. Cl. at 410–15 (exercising jurisdiction to adjudicate a modification of a task order)). In contrast, a challenge to an award of a task order is subject to the FASA bar. *See BayFirst Solutions*, 104 Fed. Cl. at 503. In this case, the GSA, "acting with the concurrence of the FDIC," waived the alleged conflict of interest, 102 days after the Task Order was awarded to CSC. Compl. ¶¶ 24–25 (quoting the Waiver, Pl. Mem. Ex. A0002).

Another salient fact is that the text of FAR 9.503 includes the word "may," indicating that a decision as to whether to waive an OCI is a matter left to agency discretion. *See Turner*

---

[14] The Government does acknowledge that the court has exercised jurisdiction to adjudicate a challenge to an Air Force delivery order to purchase network security via a particular brand instead of an open competition. Gov't Br. 22 (citing *McAfee*, 111 Fed. Cl. at 707–08). The Government, however, disputes that ruling and argues that, in any event, it is inapplicable to this case. Gov't Br. 22; *see also id.* ("Nothing in *McAfee* suggests that FASA's task order ban does not apply when jurisdiction is asserted under the 'violation of statute or regulation' . . . prong of Section 1491(b)."). Although the Government is correct that *McAfee* does not establish a systematic exemption to the FASA bar, the Government misses the more salient point that a challenge to an agency decision "not tied to any single solicitation or delivery order" avoids the bar, even though the decision was accomplished through a modification to a task order. *See McAfee*, 111 Fed. Cl. at 707. For the *McAfee* court, the timing of the agency decision supported the finding that the decision was an independent, discretionary agency action that was not "connected with" the issuance of the task order. *Id.* at 707 ("The Air Force began the process of determining its need for a new generation of network security services long before it issued the delivery order . . . , let alone modified it.").

*Constr. Co. v. United States*, 94 Fed. Cl. 561, 584 (2010), *aff'd*, 645 F.3d 1377 (Fed. Cir. 2011) ("The [G]overnment responds that the decision to waive [under FAR 9.503] is entirely discretionary and need not be documented . . . . The [G]overnment is also correct . . . [because the regulation] contains no hint of a requirement that an agency *must* waive or *must* document the reasons for a waiver decision."); *see also* GOVERNMENT CONTRACT GUIDEBOOK § 3:35 (4th ed. 2013) ("Agencies have discretion under FAR 9.503 to seek an OCI waiver."). Interestingly, in this case the GSA acknowledged that the Waiver may not have been necessary, regardless of the outcome of the GAO protest:

> [I]t should be noted that the waiver may prove unnecessary if the outcome of the GAO protest is favorable to the Government . . . . Conversely, if the outcome of the GAO protest is unfavorable to the Government on the non-OCI (technical evaluation) issue, the waiver may prove insufficient, as the non-OCI issues cannot be waived.

Pl. Mem. Ex. A at A0009.

Therefore, not only is the Waiver in this case discretionary, it is also distinct—in both a temporal and causal sense—from the ISC-3 Task Order. It is true that prior to waiving an OCI, the CO must determine the existence of an OCI, a determination that "depends on the particular facts and circumstances of the contract being performed and on the nature of the new procurement." *See Jacobs Tech. Inc. v. United States*, 100 Fed. Cl. 198, 210–11 (2011). That does not mean, however, that the Waiver had a "direct, causal relationship" to the issuance of the Task Order. *See Mori Assocs.*, 113 Fed. Cl. at 38 ("There is no direct, causal relationship between these decisions and the issuance of task orders . . . since the task orders had already issued."). In fact, the Waiver was not a necessary step towards issuance of the task order. Instead, the Waiver was a discretionary agency action to prevent GAO's review of the substance of SRA's protest. Thus, the Waiver is not similar to a corrective action that the court has found was "intimately entwined" and directly and causally linked to a series of task orders. *See Mission Essential Pers.*, 104 Fed. Cl. at 178–79 (finding the task order bar applied to the challenged corrective action); *see also id.* at 179 ("[T]he Army's corrective action *was* its decision to compete a new task order under the IDIQ [Indefinite Delivery Indefinite Quantity] contract."). Here, SRA's challenge to the substantive merits of the Waiver parallels a challenge to the Transportation Security Administration's ("TSA") independent, discretionary decision to cancel an automatic stay of performance of a task order during the protest before the GAO. *See Unisys*, 90 Fed. Cl. at 515–16. In *Unisys*, the court determined that it had jurisdiction to adjudicate TSA's decision to override an automatic stay, under 28 U.S.C. § 1491(b)(1), despite the FASA bar, because the court could "review[] an agency's compliance with [The Competition in Contracting Act section] 3553 'independent of any consideration of the merits of the underlying contract award.'" *Id.* at 517 (quoting *Planetspace Inc. v. United States*, 86 Fed. Cl. 566, 567 (2009)). Although corrective action may be a necessary component for the issuance of a task order, discretionary agency waivers designed only to short-circuit substantive review of a task order are not necessary for the issuance. *Compare, e.g.*, *Mission Essential Pers.*, 104 Fed. Cl. at 178–79 (finding corrective action to be "intimately entwined" with a series of task orders), *with Unisys*, 90 Fed. Cl. at 515–16 (finding a decision to override an automatic stay in a task order protest to be independent from the task order itself).

11

For these reasons, the court has determined that the Waiver in this case was not made "in connection with" the issuance of the Task Order, but was an independent discretionary agency action and therefore, 41 U.S.C. § 4106(f)(1) does not bar the court from adjudicating whether the Waiver otherwise violated APA standards.

## IV. CONCLUSION.

The Government has represented that the "continuing delay of the procurement is resulting in the loss of experienced staff from the [existing] SRA contract and a diminishing level of confidence in their ability to perform." Pl. Mem. Ex. L (11/19/13 Decl. of Russell G. Pittman, Director, FDIC Division of Information Technology). In light of the exigent circumstances and at the Government's request, the court has decided to request that the GAO issue an advisory opinion as to whether the Waiver violated APA standards and, if so, to adjudicate the merits of the August 26, 2013 protest no later than close of business, January 23, 2014, *i.e.*, as if the Waiver had not issued. *See* 4 C.F.R. § 21.11.[15] Therefore, the Clerk of the Court is directed to communicate with the GAO, and to request an advisory opinion accordingly.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

---

[15] Section 21.11 provides that the "GAO may, at the request of a court, issue an advisory opinion on a bid protest issue that is before the court." 4 C.F.R. § 21.11.